

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| JOHN DOE 414,  ET AL., | ) |
| | ) |
| Appellants, | )   WD78298 |
| | ) |
| v. | )   OPINION FILED: |
| | )   November 10, 2015 |
| FATHER SHAWN RATIGAN, ET AL., | ) |
| | ) |
| Respondents. | ) |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Larry D. Harman, Judge

Before Division One:  Victor C. Howard, Presiding Judge, Thomas H. Newton, Judge
and Cynthia L. Martin, Judge

Jane Doe 413 ("Doe 413"), John Doe 414 ("Father"), and Jane Doe 415 ("Mother") (hereinafter "Doe Family") appeal from the trial court's grant of summary judgment in favor of defendants Diocese of Kansas City-St. Joseph ("Diocese") and Bishop Robert Finn ("Finn") on the Doe Family's claims for damages for acts alleged to have been engaged in by defendant Father Shawn Ratigan ("Ratigan").  Finding no error, we affirm.

**Factual and Procedural Background**

In this case involving review of the grant of summary judgment, we view the record and all reasonable inferences therefrom in the light most favorable to the Doe Family, the non-movants, subject to the requirements of Rule 74.04.[1] *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376, 381-82 (Mo. banc 1993).

Doe 413 was born in 2001. Her parents are Father and Mother. The Doe Family joined the St. Patrick's Church parish in the summer of 2009. Ratigan became the pastor of the St. Patrick's Church at about the same time.

On December 16, 2010, Ken Kes ("Kes"), a computer contractor who worked for St. Patrick's Church, was asked to look at Ratigan's laptop because it was running slow. Kes determined that the hard drive was full, and in the process of deleting files, saw pictures of young girls stored on the hard drive with numbers assigned, indicating the pictures had been taken by a camera. Kes reported his discovery to the office manager at St. Patrick's Church. Kes then brought the laptop to the Church office to meet with Deacon Michael Lewis ("Deacon Lewis"). Kes assisted Deacon Lewis in navigating to one particular picture Kes had found of a young girl with her pants pulled down. Deacon Lewis contacted Monsignor Robert Murphy ("Msgr. Murphy"), the Vicar for Clergy of the Diocese at the time. On December 16, 2010, Deacon Lewis delivered the laptop to Msgr. Murphy. Msgr. Murphy asked Julie Creech ("Creech"), the Diocese's Director of Management Information Systems, to look at the laptop. On December 17, 2010, Creech

---

[1] All references to Rules are to *Missouri Court Rules Volume I--State 2015* unless otherwise noted.

copied photographs she found on the laptop to a flash drive. On the same day, Creech and her supervisor prepared a memorandum to Msgr. Murphy regarding their findings and attached copies of some of the images found on the laptop. On the same day, Msgr. Murphy contacted the Diocese's outside legal counsel for an opinion about whether the images found on Ratigan's laptop constituted child pornography. Msgr. Murphy advised Finn that he had consulted with outside counsel about images found on Ratigan's laptop. In December 2010, outside legal counsel advised Finn that in his legal opinion, the images on Ratigan's laptop were not child pornography.[2]

On December 17, 2010, Ratigan failed to report to work at St. Patrick's Church. Deacon Lewis contacted the police, who discovered Ratigan unconscious in his garage with his motorcycle running. In December 2010 during Sunday Mass at St. Patrick's Church, someone[3] announced that Ratigan had had an accident while working on his motorcycle, that those attending Mass should pray for his recovery, and that cards for Ratigan could be placed in a basket at the back of the church. In January 2011, the Diocese and Finn sent Ratigan to see a doctor for a psychiatric evaluation.[4]

In February 2011, Finn assigned Ratigan to a limited ministry as Chaplain for the Sisters of St. Francis of Holy Eucharist in Independence, Missouri. Finn imposed written

---

[2]The extent to which Finn relied on this legal advice, whether legal counsel nonetheless recommended reporting the images to authorities, and the extent to which Finn personally viewed the images found on Ratigan's laptop, are facts that are in controversy. Though controverted, these facts did not impede the grant of summary judgment. "Only genuine disputes as to material facts preclude summary judgment." *Goerlitz v. City of Maryville,* 333 S.W.3d 450, 453 (Mo. banc 2011) (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 378). "A material fact in the context of summary judgment is one from which the right to judgment flows." *Id.* (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 378).

[3]The summary record does not establish who made this announcement or the date in December when the announcement was made. December 17, 2010, (the day Ratigan was found unconscious) was a Friday.

[4]The sufficiency of the evaluation and whether additional services were recommended to Finn for Ratigan are controverted. Though controverted, these facts did not impede the grant of summary judgment. *See* footnote 2.

restrictions on Ratigan with which Ratigan agreed to comply. The restrictions included that Ratigan would avoid contact with children, would not use a computer, would use a camera only in limited circumstances, and would not take any photos of children. Neither Finn nor any other representative of the Diocese told Deacon Lewis about the restrictions, though Deacon Lewis did learn about some of the restrictions from Ratigan's brother, Brian Ratigan.

Between March 2011 and April 2011, the Doe Family had three interactions with Ratigan. In March 2011, the Doe Family arranged to meet with Ratigan at a park where the Doe Family was playing softball. Mother and Father saw Ratigan take a picture of Doe 413 with his cell phone while Doe 413 was sitting in the "V" between two branches of a tree. Later that same day, the Doe Family and Ratigan ate together at a pizza restaurant. Ratigan sat on the opposite side of the table from Doe 413. Mother and Father observed that Ratigan had his phone in his lap. On Easter Sunday in April 2011, the Doe Family attended Easter Mass at Ratigan's invitation, and spoke briefly with him before and after Mass. Ratigan did not take pictures of Doe 413 on this date.

In May 2011, Ratigan was arrested and charged with possession of child pornography. None of the charges related to Doe 413. The arrest occurred within days of the delivery to the police of a CD and a flash drive containing photographs that had been copied by Creech from Ratigan's laptop. At about the same time, Ratigan's brother gave the police CDs and other media he had found in Ratigan's residence around the time Ratigan attempted suicide. Prior to Ratigan's arrest, Finn had no contact with the Doe Family except meeting with them briefly after a service in 2010.

4

After Ratigan's arrest, Mother began to worry that Ratigan had taken pictures of Doe 413. Mother and Father began to suspect that Doe 413's underwear was visible when Ratigan took the picture of her sitting in the tree in the park. Mother and Father began to suspect that Doe 413's legs could have been open exposing her underwear at the pizza restaurant and that Ratigan could have been using his cell phone to take pictures of Doe 413 under the table.

Mother and Father gave the police photos of Doe 413 and of the clothes she was wearing in the park and at the restaurant. Detective Margaret McGuire ("Detective McGuire"), the lead investigator on Ratigan's case, found no photographs of Doe 413 on any computer, camera, phone, or device recovered in the investigation of Ratigan or in emails subpoenaed from Ratigan's email provider. Detective McGuire told Mother and Father that no photos of Doe 413 were found during the investigation.

On November 16, 2011, the Doe Family filed a lawsuit in the Clay County Circuit Court naming Ratigan, the Diocese, and Finn as defendants. An amended petition was filed in April 2012.[5] The amended petition asserted 11 counts. Counts I and III were asserted against Ratigan only and are irrelevant to this appeal. Counts II, IV, V, VI, VII, VIII, IX, X, and XI were asserted against the Diocese and Finn, and in some cases against Ratigan. Count II asserted a violation of section 537.046.[6] Count IV asserted a violation

---

[5] A file stamped copy of the amended petition is not included in the legal file. The only copy of the amended petition in the legal file is the copy attached to the Doe Family's motion for leave to file a first amended petition. A copy of the trial court's order granting leave to amend the petition is not included in the legal file. We believe it safe to assume, however, that the first amended petition was filed or deemed filed, as the Diocese and Finn filed an answer to the amended petition, and as their motion for summary judgment references the amended petition.

[6] All references to Missouri statutes are to RSMo 2000 as supplemented except as otherwise noted. Section 537.046 creates a civil cause of action for childhood sexual abuse.

5

of section 537.047.[7]  Count V asserted a claim of intentional failure to supervise clergy.

Count VI asserted a claim of negligent failure to supervise children.  Count VII asserted a

claim of fraud and conspiracy to commit fraud.  Count VIII asserted a claim of fraudulent

misrepresentation.  Count IX asserted a claim of conspiracy to commit fraud and

constructive fraud.  Count X asserted a claim of fraud, on behalf of Mother and Father

only.  Count XI asserted a claim of invasion of privacy.

The nine counts asserted against the Diocese and Finn were the subject of a

motion for summary judgment.  Following full briefing, the trial court entered a judgment

on December 8, 2014, ("Judgment") granting summary judgment in favor of the Diocese

and Finn on each of the nine counts asserted against them.

The Doe Family filed an appeal from the Judgment on January 20, 2015.[8]  Further

facts will be addressed where pertinent to our discussion of the points raised on appeal.

**Standard of Review**

We review a trial court's grant of summary judgment *de novo*.  *Goerlitz v. City of*

*Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011) (citing *ITT Commercial Fin. Corp.,*

854 S.W.2d at 376; Rule 74.04).  "Summary judgment is only proper if the moving party

establishes that there is no genuine issue as to the material facts and that the movant is

---

[7]Section 537.047 creates a civil cause of action for certain sexual and pornographic offenses involving a minor.

[8]When the Judgment was entered, the Doe Family's claims against Ratigan (who had been served, but who never filed an answer) remained unresolved.  Thus, the Judgment was not a final judgment, as it did not resolve all issues as to all parties.  Rule 74.01(a); *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) (holding that a "final judgment is defined as one that resolves all issues in a case, leaving nothing for future determination").  Ordinarily, if there is no final judgment, we must dismiss an appeal.  *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012).  However, while this appeal was pending, the trial court entered a default judgment in favor of the Doe family and against Ratigan on May 5, 2015, pursuant to Rule 74.05(a) because Ratigan failed to plead or otherwise defend the amended petition despite its due service upon him.  All issues as to all parties were resolved at that time.  The default judgment was made a part of the record on appeal in a supplemental legal file.  Though the Doe Family's notice of appeal was prematurely filed, we deem it timely filed immediately after the Judgment became final for purposes of appeal.  Rule 81.05(b).

entitled to judgment as a matter of law." *Id.* (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376). "Only genuine disputes as to material facts preclude summary judgment." *Id.* at 453 (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 378). "A material fact in the context of summary judgment is one from which the right to judgment flows." *Id.* (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 378).

Where summary judgment has been granted in favor of a defending party, we must determine whether the defending party established "a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) 'that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one' of the elements of the non-movant's claim; or (3) 'that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense.'" *Id.* (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381).

We will affirm the grant of summary judgment on any basis supported by the record, whether or not relied upon by the trial court. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. However, a party against whom summary judgment has been entered cannot challenge the grant of summary judgment with facts, arguments, or theories that were not presented to the trial court. *Walden v. Smith*, 427 S.W.3d 269, 284 (Mo. App. W.D. 2014); *Sheedy v. Missouri Highways & Transp. Comm'n*, 180 S.W.3d 66, 70-71 (Mo. App. S.D. 2005) ("[A]n appellate court will not convict a trial court of error based on an issue which was not put before it to decide.") (citing *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982)).

## Summary of Issues on Appeal

The Doe Family raises six points on appeal, each claiming error in granting summary judgment. In the first point, the Doe Family claims that all of their claims in the amended petition were established because they were entitled to an affirmative inference that spoliated evidence contained obscene images of Doe 413. In the second point, the Doe Family claims that there was sufficient evidence to show that they were defrauded "by the Diocese because the Diocese fraudulently concealed [Ratigan's] ongoing sexual exploitation of children, failed to communicate its knowledge of his perfidy to [the Doe Family] when it had a duty to do [so] and misrepresented facts upon which [the Doe Family] relied in allowing [Ratigan] access to their children." In the third point, the Doe Family claims there was sufficient evidence "to find that Ratigan violated" section 537.047. In the fourth point, the Doe Family claims that in rejecting their claim for intentional failure to supervise clergy, the trial court failed to give effect to *Gibson v. Brewer*[9] because the Diocese knew Ratigan was taking pornographic pictures of little girls and used chattels of the Diocese to protect Ratigan, who was acting as an agent of the Diocese. In the fifth point, the Doe Family claims that the trial court "improperly construed *Gibson v. Brewer*" because negligence claims may be brought against a Diocese so long as the negligence analysis does not offend the First Amendment. In the sixth point, the Doe Family claims that the Diocese is liable for Ratigan's violation of section 537.046 and for Ratigan's invasion of Doe 413's privacy under aiding and abetting and ratification theories.

---

[9]952 S.W.2d 239 (Mo. banc 1997).

We address the points individually.

**Analysis**

*Point One: Spoliation of Evidence*

The Doe Family contends that all of their claims are established because they are entitled to an affirmative inference that spoliated evidence contained obscene images of Doe 413. There are several difficulties with this contention.

First, the Doe Family's point relied on does not identify the alleged spoliated evidence and does not explain how the urged affirmative inference would operate to negate the entry of summary judgment as a matter of law as to any (let alone all) of their claims, rendering the first point on appeal nothing more than an abstract statement which preserves nothing for our review. Rule 84.04(d)(4) expressly provides that "[a]bstract statements of law, standing alone, do not comply with" the Rule's requirement with respect to the required content of a point relied on. *See Landwehr v. Landwehr*, 129 S.W.3d 395, 398 (Mo. App. W.D. 2004).

Second, the Doe Family never argued to the trial court that the spoliation of evidence entitled them to an affirmative inference that would prevent the entry of summary judgment as a matter of law as to any or all of their claims. The only time "spoliation" was raised by the Doe Family was in their suggestions in opposition to the motion for summary judgment that addressed Count IV, which alleged a violation of section 537.047. [L.F. 850-51] There, under a heading that reads "Both Ratigan and the Diocese are responsible for Spoliating Evidence," the only reference to "spoliation" is the assertion that "Ratigan destroyed the SD card [in his cell phone] at the jail [when he was

9

arrested], [and] any traces of photographs of [Doe 413] were ruined."  [L.F. 851]  The Doe Family did not allege that either the Diocese or Finn were involved in Ratigan's alleged destruction of the SD card; did not cite to any authority addressing the spoliation doctrine; did not allege that they were entitled to an affirmative inference that Ratigan's SD card contained obscene images of Doe 413; and did not argue that an affirmative inference would operate to defeat the grant of summary judgment as to any or all of their claims.  The Doe Family cannot challenge the trial court's grant of summary judgment with arguments or theories that were not presented to the trial court.  *Walden*, 427 S.W.3d at 284; *Sheedy*, 180 S.W.3d at 70-71 ("[A]n appellate court will not convict a trial court of error based on an issue which was not put before it to decide.") (citing *Lincoln Credit Co.*, 636 S.W.2d at 36).

Third, the argument portion of the Doe Family's Brief discusses Finn's return of Ratigan's laptop computer to Ratigan's brother Brian in March 2011, and Brian Ratigan's subsequent destruction of the laptop. [Appellants' Brief, p. 32, 33]  In their summary judgment pleadings, the Doe Family alleged as an additional uncontroverted fact that the Diocese and Finn encouraged Brian Ratigan to destroy Ratigan's laptop, which the Diocese and Finn controverted.  The controverted nature of this fact is immaterial, however, to the Doe Family's claimed entitlement to an affirmative inference.  There is no connection between the destroyed laptop and Ratigan's alleged use of his cell phone to take photographs of Doe 413 in March 2011.[10]  The circumstances of the laptop's

---

[10]The Doe Family does not base its claims against the Diocese and Finn on an assertion that photographs of Doe 413 appeared on Ratigan's laptop.  Ratigan last possessed the laptop on December 16, 2010.  Creech copied all photos she found on the laptop onto a flash drive on December 17, 2010.  This flash drive was delivered to the police in May 2011.  Detective McGuire reviewed this flash drive and other materials and devices delivered or

destruction are immaterial to establish, by affirmative inference or otherwise, that Ratigan took obscene photographs of Doe 413 with his cell phone. "Only genuine disputes as to material facts preclude summary judgment." *Goerlitz*, 333 S.W.3d at 453 (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 378). "A material fact in the context of summary judgment is one from which the right to judgment flows." *Id.* (citing *ITT Commercial Fin. Corp.,* 854 S.W.2d at 378).

Point One is denied.

## Point Two:  Fraud

The Doe Family's second point on appeal raises three distinct claims of error: (i) that sufficient evidence establishes the Diocese fraudulently concealed Ratigan's ongoing sexual exploitation of children; (ii) that sufficient evidence establishes that the Diocese failed to communicate its knowledge of Ratigan's perfidy to the Doe Family though it had a duty to do so; and (iii) that sufficient evidence establishes that the Diocese misrepresented facts upon which the Doe Family relied to allow Ratigan access to their children.  This point on appeal is multifarious, as it raises multiple, discrete complaints that are required to be asserted in separate points relied on.  Rule 84.04(d)(1)(A). Multifarious points on appeal preserve nothing for appellate review.  *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 96 n. 4 (Mo. App. W.D. 2015).

In addition, the point on appeal fails to identify the Counts in the amended petition implicated by the multifarious assertions of error, leaving us to speculate about the effect

---

seized during the investigation of Ratigan.  Detective McGuire reported to the Doe Family that no pictures of Doe 413 were found.  The only pictures of Doe 413 relied on by the Doe Family to state claims in the amended petition are the picture Mother and Father saw Ratigan take in the park in March 2011 while Doe 413 was in a tree and pictures Mother and Father speculate that Ratigan may have taken under the table in the pizza restaurant in March 2011.

11

of the argued errors on the trial court's grant of summary judgment. Rule 84.04(d) requires a point relied on to "explain in summary fashion why, in the context of the case, . . . legal reasons [identified in the point] support [a] claim of reversible error." In the absence of this explanation, the Doe Family's point urges nothing more than abstract statements of law, which, "standing alone, do not comply with [Rule 84.04]." Rule 84.04(d)(4).

Moreover, the point's reference to the existence of "sufficient evidence" to prove fraud claims is irrelevant to appellate review of a grant of summary judgment where the defending party need only demonstrate a right to judgment as a matter of law because one essential element of a non-movant's claim cannot be established based on the uncontroverted facts. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381.

These deficiencies collectively implicate the requirements of Rule 84.04, compliance with which is mandatory "to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Treaster v. Betts*, 297 S.W.3d 94, 95 (Mo. App. W.D. 2009) (internal citations omitted). We are nonetheless reluctant to dismiss an appeal for briefing discrepancies unless the deficiencies impede our ability to dispose of claims on their merits. *Lanham v. Div. of Emp't Sec.*, 340 S.W.3d 324, 327 (Mo. App. W.D. 2011).

Here, we exercise our discretion to review the Doe Family's second point on appeal. We read the point's reference to "sufficient evidence" as a contention that each of the essential elements of the referenced fraud claims remains subject to the resolution of genuine issues of material fact in dispute. *ITT Commercial Fin. Corp.,* 854 S.W.2d at

12

382 (holding that to defeat motion for summary judgment filed by a defending party, non-movant need not establish right to judgment as a matter of law, but "need only show that there is a genuine dispute as to the facts underlying the *movant's* right to judgment"). We read the point to refer to only three fraud theories: (i) fraudulent concealment; (ii) fraudulent nondisclosure; and (iii) fraudulent misrepresentation. These fraud theories are expressed through the allegations set forth in Counts VII, VIII, and X of the Doe Family's amended petition. We therefore read the second point on appeal to claim error in the grant of summary judgment on Counts VII, VIII, and X of the amended petition because genuine issues of material fact remain in dispute with respect to each of the essential elements of fraudulent concealment, fraudulent nondisclosure, and fraudulent misrepresentation.[11]

In the argument portion of the Brief, the Doe Family combines discussion of fraudulent concealment and fraudulent nondisclosure under the heading "Fraudulent Concealment of a Tort/Fraudulent Non-Disclosure." [Appellants' Brief, p. 34] The Doe Family relies exclusively on the case of *Batek v. Curators of Univ. of Missouri*, 920 S.W.2d 895 (Mo. banc 1996) for the proposition that *Batek* recognizes a distinct cause of action for "fraudulent concealment of a tort." We disagree. *Batek* does not recognize a distinct cause of action for fraudulent concealment of a tort but instead addresses the allegations necessary to claim that a defendant's fraudulent concealment of his own

---

[11]In the argument portion of the Brief, the Doe Family also argues error because the evidence was sufficient to support a claim for conspiracy to commit fraud. [Appellants' Brief, pp. 38-40] A "conspiracy" claim was alleged as a part of Count VII and independently in Count IX of the amended petition. The argument portion of the Brief also claims error because the evidence was sufficient to support a claim of constructive fraud. [Appellants' Brief, pp. 40-44]. A constructive fraud claim was alleged Count IX of the amended petition. These claims of error are not fairly encompassed in the second point relied on and are not preserved for appellate review. *Nichols v. Div. of Employment Sec.*, 399 S.W.3d 901, 904 (Mo. App. W.D. 2013) ("We do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point.") (citation omitted).

13

negligent conduct tolls the statute of limitations for negligence. *Id*. at 900. The statute of limitations is not at issue in this case, rendering *Batek* irrelevant. Even if *Batek* could be read to establish an independent cause of action for fraudulent concealment of a tort, the Doe Family's amended petition does not expressly plead this cause of action. It is axiomatic that the trial court's Judgment did not grant summary judgment on a cause of action that was not pled.

The balance of the argument addressing fraudulent concealment/fraudulent nondisclosure recites alleged facts and evidence, followed by the conclusory statement that "[a]ll possible elements for fraudulent concealment of a tort have been satisfied." [Appellants' Brief, pp. 34-37]. The Doe Family does not identify the essential elements of a claim of "fraudulent concealment" other than by erroneous reference to *Batek*. The Doe Family does not explain how the recited facts and evidence operate to establish that each of the essential elements of a claim of fraudulent concealment/nondisclosure[12] remain controverted. The Doe Family has not established error with respect to the grant of summary judgment on their claims of fraudulent concealment and fraudulent nondisclosure.

The Brief next addresses the claim of fraudulent misrepresentation. The Doe Family correctly notes that the elements of a fraudulent misrepresentation claim are: "(1)

---

[12]In Missouri, fraudulent nondisclosure is not a separate tort. *Hess v. Chase Manhattan Bank USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007). Rather, "[i]n nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak." *Id*. In other words, failing to speak when the law imposes a duty to do so replaces the essential element of a "false, material representation" in a fraudulent misrepresentation case. *Id*. In discussing their fraudulent concealment/nondisclosure claims, the Doe Family's Brief does not address the recognized elements of a fraudulent misrepresentation claim equally applicable to a fraudulent nondisclosure claim and does not discuss the essential element peculiar to a fraudulent nondisclosure claim--the presence of a duty imposed by law to speak.

14

a false, material representation,[13] (2) the speaker's knowledge of its falsity or his ignorance of the truth, (3) the speaker's intent that the hearer act upon the representation in a manner reasonably contemplated, (4) the hearer's ignorance of the falsity of the representation, (5) the hearer's reliance on its truth, (6) the hearer's right to rely thereon, and (7) the hearer's consequent and proximately caused injury." *Urologic Surgeons, Inc. v. Bullock,* 117 S.W.3d 722, 725-26 (Mo. App. E.D. 2003). The Doe Family then asserts that "[e]ach element is pleaded and supported by facts. The representation was continuous--as long as the Diocese covered up its priest's conduct and held him out as a priest, the misrepresentation continued." [Appellants' Brief, p. 37] The argument continues with the conclusory assertion that the Diocese and Finn prevented "children and parents from knowing that [Ratigan] was exploiting children."

The only affirmative representation identified in the Brief is the representation that Ratigan was a priest. Putting aside for the moment that the Doe Family has not identified who made this representation, it is uncontroverted that Ratigan was a priest. In other words, the representation was not false, defeating the essential element of a false, material representation.

The balance of the argument addressing the fraudulent misrepresentation claim alleges a "cover[] up [of Ratigan's] conduct." A "cover up" is not a misrepresentation, but is instead a nondisclosure. "In nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak." *Hess v. Chase Manhattan Bank*

---

[13]Some Missouri cases break this element of a false misrepresentation claim into three separate elements: (1) a representation, (2) its falsity, and (3) its materiality. *See, e.g., Trimble v. Pracna*, 51 S.W.3d 481, 498 (Mo. App. S.D. 2001); *Cabinet Distributors, Inc. v. Redmond*, 965 S.W.2d 309, 312 (Mo. App. E.D. 1998).

*USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007). In other words, failing to speak when the law imposes a duty to do so replaces the essential element of a "false, material representation" in a fraudulent misrepresentation case. *Id.* The summary judgment record demonstrates that what the Diocese and Finn knew about Ratigan's conduct, when they knew it, and whether the Doe Family reasonably relied on nondisclosure of Ratigan's conduct, are facts in controversy, rendering *some* of the essential elements of a claim of fraudulent representation the subject of material controversy.

However, a defending party need only establish that at least one of the essential elements of a claim cannot be established based on the uncontroverted facts to be entitled to summary judgment. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. Two essential elements of a claim of fraudulent misrepresentation based on a nondisclosure are not addressed by the Doe Family. The Doe Family's Brief does not address the essential element of whether the Diocese and Finn were silent under circumstances where the law imposed a duty to speak. *Hess*, 220 S.W.3d at 765. And the Doe Family's Brief does not address the essential element of consequent and proximately caused injury, *Urologic Surgeons, Inc.*, 117 S.W.3d at 726. Where, as here, summary judgment has been granted based on a defending party's claim that at least one essential element of a claim cannot be established, a non-movant must demonstrate that each of the essential elements of the claim remain subject to genuine issues of material fact in dispute. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. The Doe Family has not met this burden.

It is plain on this record that the Doe Family cannot establish the essential element of consequent and proximately caused injury. The Doe Family's fraudulent

16

misrepresentation (nondisclosure) claim asserts that but for Finn and the Diocese's failure to tell them about what had been found on Ratigan's laptop, Ratigan would not have been around Doe 413 in March 2011 and would not have had the opportunity to take obscene pictures of Doe 413. The injury alleged is that obscene photographs were taken of Doe 413. It is uncontroverted, however, that no obscene pictures of Doe 413 were found during the investigation of devices and emails to which Ratigan had access.[14] It is uncontroverted that the picture Mother and Father saw Ratigan take of Doe 413 in the park was taken while Mother and Father were nearby and under circumstances that did not arouse their concern or suspicion. Mother and Father now speculate that Doe 413's underwear may have been showing when she in the tree, although neither Mother nor Father observed that to be the case. It is uncontroverted that Mother and Father did not see Ratigan taking any pictures in the pizza restaurant, though they now speculate that he could have been, and that if he was, that it is possible Doe 413 was sitting in such a way that her underwear was exposed, though neither Mother nor Father observed that to be the case. The presence of injury--that is, that Ratigan took obscene photographs of Doe 413--is the subject of conjecture and speculation.

We understand the concern Mother and Father felt after learning of Ratigan's arrest and why Mother and Father took their concerns to the police. However, Mother and Father were advised by the police that based on their investigation, Doe 413 was not victimized by Ratigan. The fact that Doe 413 *could* have been victimized is speculative

---

[14]We recognize that the Doe Family's first point relied on asks for an affirmative inference pursuant to the spoliation doctrine that Ratigan took obscene pictures of Doe 413. For reasons we explained, *supra*, the prospect of supplying an essential element of one or more of the Doe Family's claims via an affirmative inference drawn from Ratigan's alleged spoliation of the SD card from his cell phone was never raised by the Doe Family in defense of the Diocese and Finn's motion for summary judgment and cannot be raised for the first time on appeal.

and insufficient to establish a genuine issue in dispute on the essential element of injury. "Mere speculation does not create a genuine issue of material fact." *Rustco Products Co. v. Food Corn, Inc.*, 925 S.W.2d 917, 923 (Mo. App. W.D. 1996). An issue of material fact is genuine "only if it is real and substantial; it may not consist 'of conjecture, theory and possibilities.'" *Hanson v. Union Elec. Co.*, 963 S.W.2d 2, 4 (Mo. App. E.D. 1998) (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378).

We are required to affirm the grant of summary judgment on any basis supported by the record. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. Because the trial court could have granted summary judgment on the Doe Family's fraudulent misrepresentation claim because there was no genuine issue of material fact in dispute regarding their inability to establish the essential element of injury, we find no error. As a result, we need not address whether the Doe Family can establish the additional essential element of silence under circumstances where the law imposed a duty on the Diocese and Finn to speak.

Point Two is denied.

### Point Three: Ratigan's Violation of Section 537.047

In their third point on appeal, the Doe Family argues that it was error to grant summary judgment because there is "sufficient evidence . . . to find that Ratigan violated" section 537.047.[15]

Once again, the Doe Family's point fails to identify the Counts in the amended petition as to which they contend summary judgment was improvidently granted given

---

[15]As noted, section 537.047 permits a civil action for certain sexual and pornographic offenses involving a minor.

18

this claim of error. And the point does not explain how Ratigan's violation of section 537.047 renders all of the essential elements of any claim asserted in the amended petition controverted. In short, the Doe Family has not explained, in the context of this case, how Ratigan's alleged violation of section 537.047 requires a finding of reversible error. Instead, the Doe Family's point asserts an abstract statement of law, which, "standing alone, do[es] not comply with [Rule 84.04]." Rule 84.04(d)(4).

We nonetheless elect to review this deficient point *ex gratia*. Count IV of the amended petition alleged that the Diocese and Finn violated section 537.047.[16] We read point three to claim error in the entry of summary judgment on Count IV of the amended petition because the evidence establishes that Ratigan violated section 537.047.

The amended petition alleges that the Diocese and Finn violated section 537.047 in four different ways: (i) Ratigan violated section 537.047, and was acting within the scope and course of his employment, rendering the Diocese and Finn liable under a *respondeat superior* theory; (ii) Ratigan violated section 537.047, and the Diocese and Finn aided or abetted Ratigan; (iii) Ratigan violated section 537.047, and the Diocese and Finn ratified Ratigan's acts; and (iv) the Diocese and Finn directly violated section 537.047 once they took possession of Ratigan's laptop computer.

---

[16]Count III of the amended petition alleged that Ratigan violated section 537.047. The default judgment taken by the Doe Family against Ratigan on this claim does not bind the Diocese and Finn. *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 856 (Mo. App. E.D. 1999) (holding that a default judgment does not constitute an adjudication on the merits as to support later preclusive effect of the judgment on another party).

The point relied on claims no error with respect to the assertion in the amended petition that the Diocese and Finn directly violated section 537.047 by possessing Ratigan's laptop. That claim is abandoned.[17]

The point relied on addresses only Ratigan's violation of section 537.047, an essential element, of course, for each of the three theories of vicarious liability alleged against the Diocese and Finn in the amended petition. However, the point does not claim error with respect to any other essential element of the three vicarious liability theories.

The motion for summary judgment argued that Ratigan's alleged violation of section 537.047 did not support tort vicarious liability as a matter of law; that no authority permitted extending the reach of section 537.047 to impose vicarious liability on nonperpetrators as aiders and abettors or on the basis of ratification; that the uncontroverted facts failed to establish that the Diocese and Finn ratified Ratigan's alleged efforts to take pictures of Doe 413; and that the uncontroverted facts failed to establish that Ratigan acted in the course and scope of his employment by allegedly taking obscene pictures of Doe 413. The trial court could have entered summary judgment in favor of the Diocese and Finn because the uncontroverted facts and the law precluded finding the Diocese and Finn liable for Ratigan's violation of section 537.047 on the theory of *respondeat superior*, aiding and abetting, or ratification. It is the Doe Family's "'burden on appeal to demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law . . . . [T]he [Doe Family's]

---

[17]The argument portion of the Brief does address evidence relevant to a claim that the Diocese and Finn directly violated section 537.047 by possessing Ratigan's laptop from and after December 16, 2010. However, "[w]e do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point." *Nichols*, 399 S.W.3d at 904 (citation omitted).

20

failure to properly challenge a finding and ruling of the trial court that would support its judgment . . . . [is] fatal to [their] appeal.'" *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012).[18]

Point Three is denied.

### *Point Four: Intentional Failure to Supervise Clergy*

In their fourth point on appeal, the Doe Family argues that in rejecting their claim for intentional failure to supervise clergy (Count V of the amended petition), the trial court failed to give effect to *Gibson v. Brewer* because the Diocese knew Ratigan was taking pornographic pictures of little girls and used chattels of the Diocese to protect Ratigan, who was acting as an agent of the Diocese.

In *Gibson v. Brewer*, 952 S.W.2d 239 (Mo. banc 1997) the Supreme Court announced the elements of a claim for intentional failure to supervise clergy.

> A cause of action for intentional failure to supervise clergy is stated if (1) a supervisor (or supervisors) exists, (2) the supervisor (or supervisors) knew that harm was certain or substantially certain to result, (3) the supervisor (or supervisors) disregarded this known risk, (4) the supervisor's inaction caused damage, and (5) the other requirements of the Restatement (Second) of Torts, section 317 are met.

*Id*. at 248. The "other" requirements of the Restatement (Second) of Torts, section 317 ("Section 317") are as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if

---

[18]The argument portion of the Doe Family's Brief raised an additional claim of error by arguing that the evidence established that the Diocese and Finn aided and abetted or ratified Ratigan's violation of section 537.047. However, as we have repeatedly explained, "[w]e do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point." *Nichols*, 399 S.W.3d at 904 (citation omitted).

21

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising control.

*Id.* at 247. The inability to establish any one of the five essential elements identified in *Gibson* is fatal to a claim for intentional failure to supervise clergy. *Doe v. Roman Catholic Archdiocese of St. Louis*, 347 S.W.3d 588, 592 (Mo. App. E.D. 2011).

The Doe Family's point on appeal implicates the fifth essential element--the "other" requirements of Section 317--in two ways, as the point claims the Diocese knew that Ratigan was taking pornographic pictures of children and that the Diocese used its own chattels to protect Ratigan from discovery.

Consistent with the Doe Family's point on appeal, the motion for summary judgment focused exclusively on whether the Doe Family could establish the "other" requirements of Section 317, and, in particular, the knowledge requirements and the "master's premises or chattels" requirement. Because the uncontroverted facts demonstrate that the Doe Family could not establish the "master's premises or chattels" requirement of Section 317, we need not address the knowledge requirements.

With regard to the "master's premises" prong, the motion for summary judgment alleged as uncontroverted that Ratigan and the Doe Family were together in a public park

22

and at a public restaurant in March 2011, and that their gathering was personal in nature and not Diocese organized or sponsored. The Doe Family did not controvert these facts. The motion for summary judgment thus argued that the park and the restaurant were not premises in the possession of the Diocese or Finn, or premises where Ratigan could only enter as a servant of the Diocese. The Doe Family's suggestions in opposition to the motion for summary judgment conceded this argument. Consistent with this fact, the Doe Family does not claim on appeal that Ratigan's use of the Diocese's premises is a matter in controversy.

With regard to the alternative "master's chattels" prong, the motion for summary judgment asserted that the cell phone used by Ratigan to allegedly take obscene pictures of Doe 413 was Ratigan's personal cell phone. The Doe Family did not controvert this fact.[19] The motion for summary judgment argued that Ratigan thus did not use a chattel belonging to the Diocese to allegedly take obscene photographs of Doe 413. The Doe Family did not disagree with this argument, but alternatively responded that Ratigan "used his status as a priest" to have access to Doe 413, and that this, along with Ratigan's "collar," were both "chattels of the Diocese" used by Ratigan to place him in a position to allegedly take obscene photographs of Doe 413.

On appeal, the Doe Family's point relied on does not contend that Ratigan's collar and status as a priest constituted chattels of the Dioceses. Instead, the point claims that the *Diocese* (not Ratigan) used its own chattels "to protect [Ratigan] from discovery."

_____

[19]The Doe Family controverted whether the laptop taken from Ratigan on December 16, 2010, was owned or controlled or purchased by the Diocese, but simply did not respond to the statement of uncontroverted facts reference to Ratigan's cell phone or to other computers Ratigan possessed or had access to, thus admitting that fact. Rule 74.04(c)(2).

This theory was not raised before the trial court in defense of the motion for summary judgment and is not preserved for our review. *Walden*, 427 S.W.3d at 284; *Sheedy*, 180 S.W.3d at 70-71. In any event, the newly raised contention is plainly without merit. The Diocese's use of its own chattels cannot, as a matter of law, satisfy Section 317's requirement that a ***servant*** use the master's chattels to enable the servant's intentional misconduct.

The point on appeal claims no other error relating to the "master's chattels" prong of Section 317. However, the argument portion of the Brief repeats the argument made by the Doe Family in its summary judgment pleadings that Ratigan's collar and status as a priest constitute chattels of the Diocese. We address the argument, though it is not preserved by inclusion in the point, because of its importance and novelty.[20]

The Doe Family cites two cases in support of the proposition that Ratigan's collar and status as a priest are chattels of the Diocese. Neither case supports this proposition, as both addressed the "master's premises" prong of Section 317, not the alternative "master's chattels" prong. In *Hutchison v. Liddy*, 742 A.2d 1052, 1062 (Penn. 1999), the court held that a priest's status as a priest satisfied the "master's premises" requirement of Section 317 where evidence suggested that the priest was "privileged to enter [a] motel room" with a minor "only as a servant of the Diocese." *Hutchison* did not address Section 317's alternative "master's chattel" prong. In *Weaver v. African Methodist Episcopal Church, Inc.* 54 S.W.3d 575 (Mo. App. W.D. 2001), we affirmed a jury verdict in favor of a sexually harassed reverend, rejecting, *inter alia*, the defendant church's

---

[20]*Nichols*, 399 S.W.3d at 904 ("We do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point.") (citation omitted).

24

claim that it did not *own* the church where the harassing conduct occurred. *Id*. at 582. We noted that the "master's premises" prong in Section 317 permits liability to extend to the master for a servant acts on premises owned or possessed by the master, and on premises neither owned nor possessed by the master if the servant's "employment relationship has placed the servant in a position to obtain access to some premises that are not controlled by the master." *Id*. However, we counseled that the "master's premises" prong must be read mindful that the limitations in Section 317 "serve to restrict the master's liability for a servant's purely personal conduct which has no relationship to the servant's employment and the master's ability to control the servant's conduct or prevent harm." *Id*. at 582-83. *Weaver* did not address the "master's chattels" prong of Section 317.

Even if we gratuitously construe the Doe Family's reliance on *Hutchison* and *Weaver* as an unasserted claim of error regarding proof of Section 317's "master's premises" prong, the Doe Family would not prevail. Missouri courts have twice rejected a claim that a priest's status as a priest satisfies the "master's premises" requirement of Section 317. In *D.T. v. Catholic Diocese of Kansas City--St. Joseph*, 419 S.W.3d 143, 151 (Mo. App. W.D. 2013), D.T. argued that a priest's mother's house and a hotel room "should be considered Diocese property for purposes of *Gibson* analysis because D.T.'s presence at these location occurred only because D.T. and his family trusted [the priest] as a priest." We held that "neither [the priest's] mother's house nor the hotel may be considered property possessed by the Diocese or property upon which [the priest] was privileged to enter only because of his status as a priest with the Diocese." *Id*. A similar

25

result was reached in *John Doe B.P. v. Catholic Diocese of Kansas City--St. Joseph*, 432 S.W.3d 213 (Mo. App. W.D. 2014). In that case, we held that a minor's claim that he went to a priest's mother's house because of the priest's status as a priest did not establish that the Diocese had control of the property where the abuse occurred or that the priest was privileged to enter the property only because of his status as a priest. *Id.* at 217.

In short, the "master's premises or chattels" requirement of Section 317 is not established based solely on a servant's status as such. Because the trial court could have found that the Doe Family was unable to establish the "master's premises or chattels" requirement of Section 317, it did not error in granting summary judgment in favor of the Diocese and Finn on the Doe Family's claim for intentional failure to supervise clergy.

The Doe Family's point on appeal raises the additional contention that the trial court failed to give effect to *Gibson*. The Doe Family argues that the elements of the tort of intentional failure to supervise clergy announced in *Gibson* are not exclusive. An identical claim was thoroughly discussed and rejected by this court in *D.T.*, 419 S.W.3d at 155-56.

Point Four is denied.

### Point Five: Negligence Claims

In their fifth point, the Doe Family claims that the trial court "improperly construed *Gibson v. Brewer*" because negligence claims may be brought against a Diocese so long as the negligence analysis does not offend the First Amendment.

Once again, the Doe Family fails to identify the Counts in the amended petition as to which they contend summary judgment was improperly granted given this claim of

26

error, rendering their point an abstract statement of law which, "standing alone, do[es] not comply with [Rule 84.04]." Rule 84.04(d)(4). We gratuitously review this point on appeal, reading it to apply only to Count VI of the amended petition which asserts a claim for negligent failure to supervise children.

*Gibson* held that claims of negligent hiring, ordaining, retention, or supervision of clergy are not cognizable because such claims "necessarily involve interpretation of religious doctrine, policy, and administration. Such excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment." 952 S.W.2d at 246-47. In *Doe v. Roman Catholic Diocese of St. Louis*, 311 S.W.3d 818 (Mo. App. E.D. 2010), the Eastern District relied on *Gibson* to affirm a trial court's dismissal of negligence claims against a Diocese, including a claim of negligent failure to supervise children. *Id*. at 820, 824. In *D.T.*, this court also relied on *Gibson* to affirm dismissal of negligence claims against a Diocese, including a claim of negligent failure to supervise children. *Id*. at 148-50. We are bound by these holdings due to the doctrine of *stare decisis*. *See Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 379 (Mo. banc 2014).

The argument portion of the Doe Family's Brief advances a contention altogether different than that asserted in their point relied on. The Doe Family argues that negligence which flows from "how a prudent mandatory-reporter of sexual abuse would act under the obligations of [Section] 210.115"[21] does not offend the First Amendment. [Appellants' Brief, p. 59] In effect, the Doe Family argues that a violation of section

---

[21]Section 210.115 addresses the mandatory obligation to report suspected neglect or abuse of a child.

210.115 supports a private cause of action in negligence that is not implicated by the holding in *Gibson*. The Doe Family's argument was not raised with the trial court, preserving nothing for our review. *Walden*, 427 S.W.3d at 284; *Sheedy*, 180 S.W.3d at 70-71 ("[A]n appellate court will not convict a trial court of error based on an issue which was not put before it to decide.") (citing *Lincoln Credit Co.*, 636 S.W.2d at 36). The Doe Family's argument exceeds the scope of its point relied on, preserving nothing for our review. *Nichols*, 399 S.W.3d at 904. The Doe Family cites no authority for this newly asserted proposition, preserving nothing for our review. *Goudeaux v. Board of Police Com'rs of Kansas City*, 409 S.W.3d 508, 516 (Mo. App. W.D. 2013). Regardless, this court has already held that a violation of the criminal mandatory reporting requirements set forth in section 210.115 does not support a private civil cause of action in negligence. *Bradley v. Ray*, 904 S.W.2d 302, 314 (Mo. App. W.D. 1995).

Point Five is denied.

### Point Six: Invasion of Privacy and Violation of Section 537.046

In their sixth point, the Doe Family claims that the Diocese is liable for Ratigan's violation of section 537.046 and for Ratigan's invasion of Doe 413's privacy under aiding and abetting and ratification theories.

Once again, the Doe Family's point relied on fails to identify the Counts in the amended petition as to which they contend summary judgment was improvidently granted given their claim of error. The Doe Family has not explained, in the context of this case, how their point relied on supports a claim of reversible error. Instead, the Doe

28

Family's point asserts an abstract statement of law, which, "standing alone, do[es] not comply with [Rule 84.04]." Rule 84.04(d)(4).

We nonetheless elect to review this deficient point *ex gratia*. Count II of the amended petition alleged that the Diocese and Finn violated section 537.046.[22] Count XI of the amended petition alleged a claim of invasion of privacy against the Diocese, Finn, and Ratigan. We therefore read point six on appeal to claim error in the entry of summary judgment on Counts II and XI of the amended petition because the argument section of the point references evidence that purportedly establishes the Diocese and Finn aided and abetted, or ratified, Ratigan's alleged violation of section 537.046 and his alleged invasion of Doe 413's privacy.

This reading of the point demonstrates its multifarious nature. Though multifarious points on appeal preserve nothing for appellate review, *Host*, 460 S.W.3d at 96 n. 4, we elect *ex gratia* to address the distinct claims raised in the point.

Section 537.046 authorizes a civil action for damages for a defendant's conduct that would have been a violation of one of several enumerated criminal statutes. The Doe Family's point relied on does not assert that the Diocese and Finn violated section 537.046, but instead alleges that they are liable as aiders and abettors, or for ratifying, Ratigan's violation of the statute. There are several difficulties with this argument.

First, the only conduct alleged to have involved Doe 413 is Mother and Father's speculative concern that Ratigan may have taken obscene pictures of Doe 413. Even if we assume, *arguendo*, that taking obscene pictures of a child would constitute a violation

---

[22]Count I of the amended petition alleged that Ratigan violated section 537.046, a claim that is not relevant to this appeal.

of one of the predicate criminal statutes identified in section 537.046 (an issue we need not address), "[m]ere speculation [that such pictures might have been taken] does not create a genuine issue of material fact." *Rustco Products Co.*, 925 S.W.2d at 923. The Doe Family cannot establish an essential element of their claim--that Ratigan took obscene pictures of Doe 413.[23] *Hanson*, 963 S.W.2d at 4 (holding that an issue of material fact is genuine "only if it is real and substantial; it may not consist 'of conjecture, theory and possibilities'") (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378).

Second, the Doe Family cites no authority for the proposition that "nonperpetrators" can be held liable for a perpetrator's childhood sexual abuse under section 537.046. In *Walker v. Barrett*, 650 F.3d 1198, 1208-09 (8th Cir. 2011), the Eighth Circuit, after observing that no Missouri appellate court had yet addressed the question, construed section 537.046 as plainly written to limit liability to perpetrators of childhood sexual abuse. *Id*. at 1209. We believe the reasoning in *Walker* is sound:

> Section 537.046(1) defines "childhood sexual abuse" as: 'any act committed by the defendant against the plaintiff which act occurred when the plaintiff was under the age of eighteen years and which act would have been a violation of section 566.030 [rape], 566.040 [sexual assault], . . . 566.060 [forcible sodomy], 566.070 [deviate sexual assault], . . . 566.090 [first degree sexual misconduct], 566.100 [sexual abuse], . . . or section 568.020 [incest] . . . .' A nonperpetrator defendant could not cause injury or illness by "childhood sexual abuse," as that term is defined, because such a defendant necessarily has not *committed* one of the enumerated acts. While Missouri law does hold an aider and abettor criminally liable to the same extent as the principal offender, . . . section 537.046 does not enumerate the statute criminalizing aiding and abetting, [Section] 562.041, as one of the acts that constitutes "childhood sexual abuse." Accordingly, we conclude that the Missouri legislature did not intend to subject nonperpetrator

---

[23]The default judgment taken by the Doe Family against Ratigan, which includes a judgment on their claim that Ratigan violated section 537.046, does not bind the Diocese and Finn. *Hayes*, 3 S.W.3d at 856 (holding that a default judgment does not constitute an adjudication on the merits as to support later preclusive effect of the judgment on another party).

defendants to liability under section 537.046. *Accord Doe HL v. James*, No. 4:05-CV-2032, 2006 WL 6677124, at *3 (E.D. Mo. Aug. 15, 2006) (concluding that "[t]he statute defining childhood sexual abuse does not make an unincorporated association responsible for childhood sexual abuse" and that "plaintiff cannot assert a claim of childhood sexual abuse . . . against the [unincorporated association] based on a theory of agency ratification.").

650 F.3d at 1209. The Doe Family's claim that the Diocese and Finn violated section 537.046 because they aided and abetted, or ratified, Ratigan's violation of the statute fails as a matter of law.

Even presuming the Doe Family could sue the Diocese and Finn for childhood sex abuse pursuant to section 537.046 under an aider and abettor or ratification theory, the Doe Family has not demonstrated a genuine issue of material fact in dispute with respect to the factual basis for such a claim. The Doe Family's Brief alleges that "[t]he Diocese and [Finn] provided [Doe 413] to [Ratigan] for the photographing." [Appellants' Brief, p. 63] This inflammatory assertion is not supported by citation to the record and is defied by uncontroverted evidence that Ratigan's contacts with the Doe Family in March 2011 were privately arranged gatherings in public locations.

Reduced to its essence, the Doe Family's true complaint is that had the Diocese and Finn "acted in a reasonable manner," Doe 413 "would never have been a victim" of Ratigan. [Appellants' Brief, p. 63] This assertion is nothing more than a reconstituted claim of negligence, the lack of cognizability of which we have already addressed and need not repeat. *See Gibson*, 952 S.W.2d at 246-49. The trial court did not error in granting summary judgment on the Doe Family's claim that the Diocese and Finn violated section 537.046.

We next turn to the Doe Family's invasion of privacy claim. In the amended petition, the Doe Family alleged that "[b]etween December 2010 and May 2011, [Doe 413] began having contact with [Ratigan] and [he] surreptitiously made pornographic, lewd and lascivious photographs of [Doe 413,] continuing to invade her privacy." [L.F. 349, ¶ 203] It is now uncontroverted that the only occasions where the Doe Family speculates such photographs might have been taken were in March 2011 at the park and at the pizza restaurant.

The Diocese and Finn dispute that vicarious liability for the tort of invasion of privacy can be imposed on the theories of aiding and abetting or ratification. We need not resolve that issue. The Doe Family's invasion of privacy claim necessarily depends on an essential element that is the subject of speculation--that Ratigan surreptitiously took pornographic, lewd and lascivious photographs of Doe 413. Mother and Father's speculation is insufficient as a matter of law to create a genuine issue of fact in dispute as to whether Ratigan in fact did so. *Rustco Products Co.*, 925 S.W.2d at 923 ("Mere speculation does not create a genuine issue of material fact.").

In the argument portion of their Brief, the Doe Family claims that Ratigan violated section 565.253.1, the crime of invasion of privacy in the second degree. The Doe Family argues that the Diocese and Finn could be liable as aiders and abettors for this crime pursuant to section 562.042, the criminal statute addressing criminal responsibility for the conduct of another. Violation of section 565.253.1 was not alleged as a claim in the amended petition and was not raised with the trial court to defend the summary judgment motion. This newly asserted theory of recovery is not preserved for our review,

32

as a party cannot challenge the grant of summary judgment with facts, arguments or theories that were not presented to the trial court.[24] *Walden*, 427 S.W.3d at 284; *Sheedy*, 180 S.W.3d at 70-71.

Point Six is denied.

## Conclusion

The trial court's Judgment is affirmed.


*Cynthia L. Martin*
Cynthia L. Martin, Judge


All concur.

---

[24]We express no opinion, therefore, about whether violation of section 565.253.1 authorizes a private civil cause of action for invasion of privacy.