

# Missouri Court of Appeals

## Southern District

### Division One

TOMMY MORPHIS, )
)
        Appellant, )
)
vs. )     No. SD36307
)     Filed: March 3, 2021
BASS PRO GROUP, LLC, )
TRACKER MARINE, LLC, )
and KEN BURROUGHS, )
)
        Respondents. )
)

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark A. Powell, Judge

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Tommy Morphis sued Bass Pro Group, Tracker Marine, and Ken Burroughs (collectively "Defendants") alleging they failed in a promise to create an incentive plan to increase Morphis's compensation by $400,000 per year for three years.[1] After Defendants won summary judgment on 10 of 11 counts, Morphis dismissed his surviving count and brought this 21-point appeal.

---

[1] Morphis (also referred to as "Plaintiff") started working for Tracker, a boat manufacturer, in 1995. Burroughs was Tracker's president from 1994 to 2009, when he was replaced by James Hagale, now also president of Bass Pro, Tracker's parent company. Bass Pro and Tracker are privately-held companies founded by majority owner John L. Morris.

Throughout this case, the parties have used terms like "incentive plan," "profits-interest plan," "retirement plan," and "profit-sharing plan" interchangeably. Technical differences between such terms being irrelevant to this appeal, we tend to simply use "plan."

Our review is de novo. ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993).  Viewing the record most favorably to the non-movant Morphis (***id.***) and according him the benefit of every doubt (***Seaton v. Shelter Mut. Ins. Co.***, 574 S.W.3d 245, 246-47 (Mo. banc 2019)), we affirm in part, reverse in part, and remand.

## Background

Morphis first filed suit in 2010, eventually amending his petition to assert 11 counts for tort, contract, and ancillary relief.  In 2013, the trial court sanctioned Morphis and his attorney for discovery violations, following which Defendants sought summary judgment on all counts.  After the court heard argument and took the motion under submission, Morphis voluntarily dismissed his case, refiled it the same day, and disqualified the judge.

Defendants sought and obtained another protective order regarding Morphis's prior discovery violations, then again sought summary judgment, which was granted on all counts in October 2015.

Morphis appealed to this Court, which found procedural failings regarding the protective order and, in turn, a procedural need to set aside the summary judgment.  We reversed and remanded for an evidentiary hearing regarding the protective order, then to proceed consistent with our opinion.  *See **Morphis v. Bass Pro Group, LLC***, 518 S.W.3d 259 (Mo.App. 2017)("***Morphis I***").

On remand, Defendants filed an amended motion for protective order.  The court held an evidentiary hearing, admitted evidence, and upon Morphis's request therefor, included 40 pages of fact findings and legal conclusions as support for a July 2018 protective order.[2]  Later, Defendants again sought summary judgment, which the court granted in July 2019 except as to Morphis's negligent-misrepresentation Count III.  Morphis then voluntarily dismissed Count III, the court entered a final judgment for Defendants, and Morphis brought this appeal.

---

[2] Point 16, which claims the order was entered without evidence of good cause or prejudice, fails because it ignores the no-substantial-evidence framework established in ***Houston v. Crider***, 317 S.W.3d 178, 186-87 (Mo.App. 2010).  Further, Exhibits A-Z and AA-PP were admitted at the hearing in evidentiary rulings not challenged on appeal.

**Analysis**

*Contract-Based Claims (Points 1-5)*

We take together these points relating to Morphis's contract-based claims, denying them all because Morphis shows, at most, only a gratuitous promise to vastly boost his compensation for no extra work. His continued employment may have been an implicit *condition* to reaping any such windfall, but was not contractual *consideration* that bound Defendants to pay up.

A contract involves an offer, acceptance, and bargained-for consideration. ***Baker v. Bristol Care, Inc.***, 450 S.W.3d 770, 774 (Mo. banc 2014). Mere expressions of intention, which are all Morphis ever showed, do not amount to offers. 1 Williston on Contracts § 4.9 (4th ed. 2020). Nor did Morphis show any bargained-for consideration or exchange, either that he bargained for the extra $400,000 annually he now seeks, or that he bargained to continue working at Tracker for any reason.[3] Either failing defeats Morphis's contract claims, so we need not discuss why § 432.010's statute of frauds also would bar recovery.

*Ancillary Claims (Points 6-13 & 19-21)*

These points involve ancillary claims that depend on success in the contract-based counts, so they also fail.

---

[3] An Ohio case collects hornbook common-law contract principles applicable here:

> Gratuitous promises are not enforceable as contracts, because there is no consideration. Restatement of [the Law 2d, Contracts (1981)], 172–174, Section 71, Comments *a* and *b* . . . . A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract. 2 Corbin, Contracts (Rev.1995) 20, Section 5.3. Likewise, conditional gratuitous promises, which require the promisee to do something before the promised act or omission will take place, are not enforceable as contracts. Restatement of Contracts, *supra*, 174, Section 71, Comment *c*. While it is true, therefore, that courts generally do not inquire into the adequacy of consideration once it is found to exist, it must be determined in a contract case whether any "consideration" was really bargained for. If it was not bargained for, it could not support a contract.

***Carlisle v. T & R Excavating, Inc.***, 704 N.E.2d 39, 43 (Ohio App. 1997).

*Fraudulent Misrepresentation (Point 15)*

By contrast, Morphis's challenge to summary judgment on his fraudulent-misrepresentation claim is well taken. To start, Defendants' Statement of Uncontroverted Material Facts ("SUMF") asserts 150 evidentiary facts, not material facts.[4] For evidentiary facts to prove material (*i.e.*, ultimate) facts, a factfinder usually must weigh evidence and draw inferences. This rarely works in summary judgment where courts are not factfinders, cannot weigh evidence, and must view inferences against the movant. ***ITT***, 854 S.W.2d at 376, 378.

To make matters worse, Defendants disregard *all* SUMF denials, claiming that Morphis's supporting affidavit contradicted his earlier deposition testimony. Defendants correctly cite the rule (*see **Calvert v. Plenge***, 351 S.W.3d 851, 855-

---

[4] To briefly review these distinctions and their importance, "ultimate facts" and summary-judgment "material facts" are equivalent concepts (all following emphasis ours):

- "*Ultimate* facts are those the jury must find to return a verdict for the plaintiff." ***R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.***, 568 S.W.3d 420, 425 (Mo. banc 2019).
- "A *material* fact in the context of summary judgment is one from which the right to judgment flows." ***Goerlitz v. City of Maryville***, 333 S.W.3d 450, 453 (Mo. banc 2011).
- "[*M*]*aterial* facts are those *ultimate* facts that constitute the elements of a cause of action or affirmative defense, sometimes referred to as 'elements facts.'" ***Custer v. Wal-Mart Stores East I, LP***, 492 S.W.3d 212, 215 (Mo.App. 2016)(internal citation omitted).

By contrast, "evidentiary facts" generally play a subordinate persuasive role:

- "A proper verdict-directing instruction submits only the *ultimate* facts, not *evidentiary* details." ***Blanks v. Fluor Corp.***, 450 S.W.3d 308, 395 (Mo.App. 2014).
- "[T]he facts that must be pleaded are the *ultimate* facts, not *evidentiary* facts." ***R.M.A.***, 568 S.W.3d at 425.
- "Credible, believable, even uncontradicted proof of *evidentiary* facts may not prove a contested issue of *ultimate* fact to the fact-finder's satisfaction." ***Black River Elec. Coop. v. People's Cmty. State Bank***, 466 S.W.3d 638, 640 (Mo.App. 2015).

*See also **Columbia Mut. Ins. Co. v. Heriford***, 518 S.W.3d 234 (Mo.App. 2017), which distinguished at length between any item of evidence playing "a primary role as a material fact, where its mere existence is a fact from which the right to [summary] judgment flows," or only "a secondary, supporting role to that of a material fact—where its existence directly or inferentially tends to prove or disprove a particular material fact . . . ." ***Id.*** at 240-44 (internal quotations and citation omitted).

56 (Mo.App. 2011)), but overstretch it in three respects:

1. Defendants' brief specifies alleged contradictions to only three of 115 SUMF denials (#66 (twice), #70, and #146).

2. Checking those three, we find "affirmative contradiction" (***Calvert***, 351 S.W.3d at 856) only as to SUMF#146, which Bass Pro's own interrogatory answers also contradict as noted below.

3. Morphis did not rely solely on his affidavit for most denials, but usually cited other record support too.

Defendants' blanket disregard for all SUMF denials cannot withstand any of these, let alone all of them, which alone warrants a reversal on this claim.

In addition, as developed below, summary judgment fails even if we ignore Morphis's affidavit completely.

Correctly noting that failure to prove any of fraudulent misrepresentation's nine elements[5] bars recovery, Defendants initially claim Morphis did not prove five, but offer meaningful arguments only on two related elements:  falsity and representation.[6]

As to those, Defendants admit they led Morphis to believe they were still considering a plan for him as late as 2009.  They also claim those assertions were true ("Burroughs and Morris made truthful statements about the possibility of a plan . . . and did explore many plan options, while making these statements") and uncontrovertibly proven so.  For example, they cite SUMF #49 as uncontroverted proof that "until 2009, [Defendants] were still considering some plan that would

---

[5] As set forth in ***Stevens v. Markirk Construction, Inc.***, 454 S.W.3d 875, 880 (Mo. banc 2015), the nine elements of fraudulent misrepresentation are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

[6] Defendants develop no "materiality" argument and thus abandon that assertion. Their scant combined argument on the "reliance" and "damage" elements fails because (1) every cited SUMF, except one, was denied; (2) Defendants suggest no reason to discredit those denials; and (3) whether denied or not, the cited SUMFs are merely evidentiary, addressing reliance or damage only by inference, but Morphis gets the benefit of inferences on summary judgment. ***ITT***, 854 S.W.2d at 376.

have included [Morphis]." Similarly, they cite SUMF #50 as uncontroverted proof that "[u]p to and including 2009, Morris had supported trying to create some sort of plan that would have included [Morphis]."

Yet Morphis denied both of these "facts," citing as support two Bass Pro interrogatory answers:

- One interrogatory had asked whether Bass Pro ever meant for Morphis to participate in either Hagale's solo plan *or* a second plan Burroughs admittedly had discussed with Morphis. Bass Pro answered that "it consulted with outside counsel regarding developing a plan" for certain executive management employees, but that incident to adopting Hagale's plan, "John Morris made the decision that employees other than Jim Hagle [sic] would not be allowed to participate in such a plan. This decision was made in 2007."

- The other interrogatory asked if Bass Pro made any efforts or took any steps to establish *any* plan for Morphis. Bass Pro answered that it considered adopting an executive incentive plan "during 2005, 2006, and early 2007 …. However, no further steps were taken to provide such a plan for Plaintiff."

These sworn statements justify Morphis's denials even if we ignore his affidavit.

They likewise support Morphis's Rule 74.04(c)(2) assertions, confirmed by Defendants per Rule 74.04(c)(3), that the following additional material facts remained in dispute (cited record support omitted):

10. By early 2007 Bass Pro Group had abandoned all efforts to provide the plan to Plaintiff and had made the decision that Plaintiff would not be allowed to participate in any such plan.

11. In 2007 John Morris, owner of Bass Pro Group and Tracker Marine, made the decision that only James Hagale would be allowed to participate in a plan and that no other key executive employees would be allowed to participate in a plan.

12. After early 2007 Bass Pro Group made no efforts and took no further steps or actions to develop, implement or provide the plan described, offered and promised to Plaintiff by Ken Burroughs.

Defendants might explain their interrogatory answers to a jury's satisfaction and prevail on these fact issues at a trial, but they preclude summary judgment on this count. "It is proper to weigh competing evidence at a trial, but such is not the

case where the same question is presented in the context of a motion for summary judgment." ***Missouri Dist. Church of the Nazarene v. First Church of the Nazarene of Caruthersville***, 312 S.W.3d 428, 431 (Mo.App. 2010)(internal quotation marks omitted).

Thus, even without Morphis's affidavit, Defendants' interrogatory answers show that genuine factual disputes preclude summary judgment on Count XI as Morphis asserted below and reasserts here as Point 15. We grant that point, which moots Point 14's alternative challenge to judgment on the same count.

*Protective Order (Point 17)*

Point 17 challenges the 2018 protective order entered following our ***Morphis I*** remand. As noted previously, at Morphis's request, the court made 40 pages of supporting findings and conclusions, but a succinct summary will suffice given our standard of review.

After the May 2018 evidentiary hearing, the court found that:

- Morphis secretly recorded Defendants' employees four times through May 2010 and gave the recordings to his counsel before or at the outset of his lawsuit.

- Despite several relevant discovery requests, Morphis and his counsel disclosed none of these recordings until, after depositions, they produced an altered version of one recording in support of their 2013 request to file a fourth amended petition.

- Only after the (then-presiding) judge asked about other recordings did Morphis produce the rest and eventually admit that the recording he initially produced had been altered.

The trial court then entered its July 2018 protective order which, as relevant here, barred Morphis from directly or indirectly using or referring to any such recording for any purpose, including cross-examination. The court's findings of good cause for doing so included, but were not limited to, the following:

- Morphis and his counsel acted in bad faith by providing incomplete and false discovery responses and by intentionally withholding the recordings. This flagrant violation of discovery rules was an affront to the purposes of discovery.

7

- Morphis and his counsel utilized discovery to hide responsive evidence and obfuscate the truth by answers and responses can only be construed as intentionally false and establish an intent to deceive.

- These intentionally incomplete, evasive, misleading, and false discovery responses breached Morphis and his counsel's Rule 56 obligations to disclose.

- The deceit of Morphis and his counsel did not stop with simply providing false sworn discovery responses, but showed a pattern of deceptive discovery practices intended to deceive Defendants.

- Morphis's counsel did not apprise Defendants of the existence of the recordings, let alone produce them, although they were responsive to numerous discovery requests.

- The written discovery was done in different sets, over a period of time, so the fraud continued over a period of years.

- In responding to three sets of interrogatories and two production request that required disclosure of the recordings, Morphis never mentioned them.

- Both Morphis and his counsel signed the answers to interrogatories, and Morphis's counsel signed the responses to the requests for production of documents.

- Further, Morphis's counsel supplemented discovery without identifying the recordings.

- By withholding four recordings that contained Rule 56.01 statements and were requested through at least eleven discovery requests, Plaintiff flagrantly violated the discovery rules. He and his counsel intentionally concealed material directly relevant and responsive to Defendants' discovery requests, and discovery that is required to be produced under the Missouri Rules of Civil Procedure.

- This contemptuous behavior and pattern of deceit continued over a period of years by numerous fraudulent acts to conceal the existence of the recordings so Morphis could benefit by the non-disclosure and Defendants would be prejudiced.

- Morphis and his counsel should not be rewarded by their deceptive behavior.

8

- The conduct of Morphis and his counsel offends the purpose of discovery – to eliminate concealment and surprise in the trial of lawsuits. Justice requires that Morphis and his counsel not be permitted to gain a tactical advantage from such abuses.

- Allowing Morphis to use the purposely withheld, altered recordings would be a miscarriage of justice to Defendants' prejudice.

The hearing record supports the trial court's findings. As Morphis admits, we review for abuse of discretion, reversing only if the order was so arbitrary, unreasonable, illogical, and ill-considered as to shock the sense of justice. *See Ferguson v. Strutton*, 302 S.W.3d 239, 243 (Mo.App. 2009). We cannot so find. Point denied.[7]

## Conclusion

We affirm the judgment in all respects except as to Count XI, fraudulent misrepresentation. As to Count XI only, we reverse and remand for further proceedings consistent with this opinion.

DANIEL E. SCOTT, SENIOR JUDGE – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, PRESIDING JUDGE – CONCURS

WILLIAM W. FRANCIS, JR., JUDGE – CONCURRING IN PART IN RESULT ONLY, DISSENTING IN PART IN SEPARATE OPINION

---

[7] The same standard dooms Point 18, which charges error in denying Morphis leave to amend his petition, almost ten years into the litigation, to add new theories based on the same pleaded facts. The "new and amended claims are based entirely on the facts and allegations contained in [the] original petition," and Morphis "failed to show any reason why the proposed allegations and causes of action were not included in the original petition." *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 92 (Mo.App. 2012). "'There is no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed.'" *Id.* (quoting *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 258 (Mo.App. 2012)).



# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| TOMMY MORPHIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. SD36307 |
| | ) | Filed: March 3, 2021 |
| BASS PRO GROUP, LLC, | ) | |
| TRACKER MARINE, LLC, | ) | |
| and KEN BURROUGHS, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## CONCURRING IN PART IN RESULT ONLY, DISSENTING IN PART

I concur only in the result of the principal opinion that affirms the trial court. I dissent

from that part of the opinion that reverses and remands. I would affirm the trial court on the

granting of summary judgment on the misrepresentation claims in Morphis' Point 15.

Morphis' Point 15[1] fails to demonstrate reversible error. His arguments are premised on

an inaccurate and incomplete compilation of the uncontroverted material facts in the summary

---

[1] The opinion grants point 15, finding Point 14 moot and impliedly denying it on that basis. To be clear, Morphis' Point 14 would fail regardless of mootness. Point 14 asserts that the trial court erred "in entering summary judgment on [Morphis'] Count XI claim for fraud and concealment." The three paragraphs in Morphis' brief making up the attendant argument contain no citations to the record, do not set out any element of the cause of action to which Count XI or Point 14 purportedly relate, and do not present any discussion of how the summary judgment record relates to any one of those elements.

judgment record; fail to accurately account for which of the nine elements of his misrepresentation claim were raised in *prima facie* showing by Respondents; and where, how, or if such elements were controverted by Morphis in the summary judgment record.

We are obliged to affirm the trial court's grant of summary judgment "on any basis supported by the record[,]"[2] meaning that Morphis' burden as appellant is to demonstrate "that there was no authorized route by which the trial court could have arrived at its result. If an outcome-sustaining route is left unchallenged or undefeated, the judgment must be affirmed."[3]

Context is necessary here. Respondents "may establish a right to judgment by showing . . . facts that negate *any one* of the claimant's elements facts[.]" *ITT Commercial Finance Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis in original).

On appeal from an adverse summary judgment, the opposite task becomes *appellant's burden—i.e.*, to demonstrate that the uncontroverted material facts do *not* negate any one of the elements making up the appellant's underlying claim. *See **Green v. Fotoohighiam***, 606 S.W.3d 113, 120 (Mo. banc 2020) (citing ***Great Southern Bank v. Blue Chalk Construction***, **LLC**, 497 S.W.3d 825, 835 (Mo.App. S.D. 2016)) (arguments "disconnected from the numbered paragraph material facts in the summary judgment record, as required by Rule 74.04, are ***analytically useless*** in . . . appellate review[.]").[4] (emphasis added). Arguments that are not in accord with this narrow

---

[2] *Nowden v. Division of Alcohol & Tobacco Control*, 552 S.W.3d 114, 116 (Mo. banc 2018).

[3] *TracFone Wireless, Inc. v. City of Springfield*, 557 S.W.3d 439, 444 (Mo.App. S.D. 2018); *see **Lollar v. Lollar***, 609 S.W.3d 41, 45 n.4 (Mo. banc 2020) ("An appellant bears the burden to overcome many presumptions on appeal, including the presumption that the circuit court's judgment is correct. To satisfy this burden, and overcome the judicial preference for 'finality of judgments,' an appellant must comply with the rules of appellate procedure. Compliance with appellate briefing rules is necessary to ensure appellate courts do not take on an advocacy role by easing the burden on the appellant and speculating about facts or arguments that may overcome the presumption that the judgment is correct.") (internal quotation and citations omitted).

[4] All rule references are to Missouri Court Rules (2014).

framework, "provide no legal basis for concluding that the trial court did not comply with [Rule 74.04,]" "exceed the limits of *de novo* review[,]"and "require this court to become Appellants' advocate, a role we cannot assume[.]" ***Blue Chalk***, 497 S.W.3d at 835.

I disagree with the principal opinion's decision to grant Morphis' Point 15. Point 15 argues that the trial court erred in entering summary judgment in favor of Respondents on "[Morphis'] Count XI claim for fraud and concealment." His argument suggests both that: (1) Respondents "falsely represent[ed]" and made "misleading comments" (relating to the first element of fraudulent misrepresentation)[5] as to a purported plan,[6] and (2) "Respondents concealed" and "suppressed and failed to disclose the 2007 decisions" (relating to the first element of fraudulent non-disclosure).

> In order to make a submissible case of fraudulent misrepresentation, a plaintiff must prove nine essential elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

---

[5] ***Hess v. Chase Manhattan Bank, USA, N.A.***, 220 S.W.3d 758, 765 (Mo. banc 2007).

[6] An appellant is required to formulate his point relied on and present an argument section thereon that relates to one discrete basis for reversal. Fraudulent misrepresentation refers to an affirmative representation. Fraudulent non-disclosure refers to the absence of such affirmative representation. The *actus reus* for these two claims are fundamentally inconsistent, and Morphis' blending of these two discrete claims in his Point 15 argument should be construed as multifarious.

Moreover, Morphis' Point 15 argument does not designate what specific cause of action he claimed below in Count XI, or what cause of action the trial court rejected in Count XI in granting summary judgment. *See* Rule 84.04(e) ("For each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved[.]"); ***Doe v. Ratigan***, 481 S.W.3d 36, 41 (Mo.App. W.D. 2015) ("a party against whom summary judgment has been entered cannot challenge the grant of summary judgment with facts, arguments, or theories that were not presented to the trial court."); ***Whipple v. Allen***, 324 S.W.3d 447, 449 (Mo.App. E.D. 2010) ("The overall purpose of fact pleading is to enable a person of common understanding to know what is intended.") (internal quotation and citation omitted); 34 Mo. Prac., Personal Injury and Torts Handbook § 54:7a. (2020 ed.) (While "[t]he plaintiff is not required to designate the nature of the cause of action[,] [t]he court must be able to state the nature of the cause of action from the petition. The trial court's [authority] depends on its ability to know what questions it must decide.").

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007).

"This Court has not recognized a separate tort of fraudulent nondisclosure[.] . . . Instead, in such cases, a party's silence in the face of a legal duty to speak replaces the first element[]" of "fraudulent misrepresentation." *Id.* In other words, "in nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak." *Doe v. Ratigan*, 481 S.W.3d 36, 45 (Mo.App. W.D. 2015) (internal quotation and citation omitted).

> [M]ere acknowledgement of a mutual trust and confidence between the parties in an ordinary, arms-length business relationship, alone, is insufficient to give rise to the heightened duty to disclose a material fact that accompanies a fiduciary relationship. Indeed, the mere existence of a business relationship does not give rise to a fiduciary relationship, nor to a presumption of such a relationship.

*Sun Aviation, Inc. v. L-3 Communications Avionics Systems, Inc.*, 533 S.W.3d 720, 728 (Mo. banc 2017) (internal quotation and citation omitted).[7]

Quite simply, Morphis' Point 15 arguments as to fraudulent misrepresentation *and* fraudulent non-disclosure are premised on an inoperative version of the uncontroverted material facts in the summary judgment record. Respondents direct us to their *extensive* briefing,[8] identifying in detail numerous instances in Morphis' responses to Respondents' Statement of Uncontroverted Material Facts ("SUMF") and Morphis' additional SUMF, reflecting Morphis' use of his own contradictory testimony in an effort to create a genuine issue of material fact and

---

[7] "Certainly, most contracts involve a degree of the factors indicative of reposed trust and confidence. Parties may deal at arms length for mutual profit without subjecting themselves to heightened fiduciary duties." *Sun Aviation*, 553 S.W.3d at 728 (internal quotation and citation omitted). "This ensures that common commercial dealings are not subject to heightened fiduciary responsibilities[.]" *Id.* (internal quotation and citation omitted).

[8] Respondents specifically direct us to "Defendants' Response to Plaintiffs' Statement of Additional Uncontroverted Material Facts," "Defendants' Reply in Support of their Motion for Summary Judgment," and "Defendants' Specific Replies to Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts." The last of these filings is nearly 70 pages long, and at length, sets out the instances and import of Morphis' testimony contradictions.

avoid summary judgment.[9]  In connection with ***Morphis I***, Respondents (excluding Burroughs) took Morphis' deposition on February 7, 2013.  Morphis dismissed his petition in ***Morphis I*** on June 27, 2014, and filed his petition in ***Morphis II*** later the same day.  Four years later, Respondents filed their motion for summary judgment and associated SUMF on May 24, 2019.  Morphis' affidavit was notarized on June 17, 2019—several weeks after Respondents' filed their motion for summary judgment—and Morphis filed his responses and additional SUMF on June 24, 2019.

"In any event, a party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact." ***ITT Commercial Finance***, 854 S.W.2d at 388.  "The utility of summary judgment as a procedure for screening out sham issues of fact would be diminished if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony." ***Stanbrough v. Vitek Sols., Inc.***, 445 S.W.3d 90, 103 (Mo.App. E.D. 2014) (internal quotation and citation omitted).

Respondents' SUMF 146 is an example:

> **146.    Mr. Morphis does not think that Ken Burroughs lied to him or withheld the truth about the consideration of a profits sharing/retirement plan.  Exhibit A, Morphis Dep. 303:2-7.**

(Bolding in original).  The cited portion of Morphis' deposition testimony, *supra*, states:

> **Q.    Do you think that Ken Burroughs ever lied to you or didn't tell you the truth with respect to what was going on with respect to the consideration of a retirement plan or profit-sharing plan?**

---

[9] In his reply brief, Morphis describes this preserved, *extensively* briefed—and under our standard of review—presumably well-taken argument as "a supposed 'Eureka' moment" reflecting "a couple of examples[.]"  Morphis argues that those examples "do not reflect *contradictory* responses to the *same* question or issue."  (Emphasis in original).  He provides no examples or analysis to demonstrate this.  Morphis then concludes that "[m]oreover, these statements do not represent *actual* 'material facts.'"  (Emphasis in original).  We assume that the trial court ruled in favor of Respondents' arguments as to Morphis' contradictory testimony, and ruled against Morphis' "not actual material facts" objections to Respondents' SUMF—Morphis' bare legal conclusions (below and on appeal) cannot suffice to meet his burden to overcome those presumptive rulings.

A.      No.

(Bolding in original).

After eschewing Morphis' unmeritorious objections, the substance of his response to SUMF 146 is as follows:

> Plaintiff denies this paragraph:  Burroughs concealed the 2007 decision to abandon efforts for a plan for anyone other than Hagale, as well as Morris' decisions to exclude everyone except Hagale from receiving a plan.  See Exhibit A, Morphis Dep. 303:2-7; Exhibit 1 [Morphis Affidavit] ¶¶ 13, 18, 19, 23, 24, 26; Exhibit L, No. 24; Exhibit P, No. 8; Exhibit P, No. 15.[10]

Morphis cites to the same portion of his deposition testimony relied upon by Respondents' SUMF 146, recited *supra*, which—to say the least—does ***not*** support Morphis' statement in response, much less controvert Respondents' SUMF 146.

Morphis' response next cites and attempts to rely on the following paragraphs from Exhibit 1 (Morphis' affidavit):

> 13.      I asked Burroughs about the status of the plan on many occasions after April 20, 2006, through 2009.  I asked about the status of the plan after early 2007 and after August 7, 2007.  Burroughs told me that the plan was being worked on and was going to be provided.  He never told me at any time that implementation of the plan had been abandoned and that it was not going to be provided.  I questioned Burroughs frequently, sometimes at least monthly on the average through early 2009, about the status of the plan.  Burroughs told me that my plan had been delayed for various reasons, but was going to be provided, and that I should remain patient, keep working and doing my job in order to receive the plan.  Until 2010, neither Burroughs nor anyone else ever told me that I was not going to be allowed to participate in the plan I had been offered and promised on April 20, 2006.

---

[10] Exhibit P, "Defendant Bass Pro Group, LLC's Answers and Objections to Plaintiff's Second Amended Interrogatories," was filed by Bass Pro under seal, in accord with an order of the trial court, and "therefore we discuss it only to the extent necessary to resolve the issues raised in this appeal." ***John Patty, D.O., LLC v. Missouri Professionals Mut. Physicians Prof'l Indem. Ass'n***, 572 S.W.3d 581, 584 n.2 (Mo.App. E.D. 2019).  Summarily, Morphis' reliance on Exhibit P to controvert SUMF 146 is unavailing.  The cited portions of Exhibit P are extrinsic to substance of the particular statement of fact lodged in SUMF 146—more plainly, Morphis' utilization of Exhibit P is evasive, argumentative, and nonresponsive to the substance lodged by SUMF 146.  (In numerous instances, Morphis' responses to do not actually respond to or controvert the substance asserted by Respondents' SUMF; moreover, a significant portion of the exhibit citations utilized in Morphis' responses and additional SUMF are likewise not in compliance with the requirements of Rule 74.04 and associated case law).

. . . .

18.    I was never told by anyone of Morris' and Bass Pro Group's 2007 decisions to (1) exclude me from participation in the plan, (2) to only allow James Hagale to participate in a plan, or (3) to abandon any steps and efforts to provide the plan to me. . . . The Defendants had superior knowledge of the 2007 decisions, and I had no access to that information or those decisions. Rather, despite my frequent questions to Burroughs about the status of the plan, I was told to keep working because the plan was 'in the works' and was going to be implemented.

19.    I relied upon the representations that my plan was going to be provided upon Defendants' silence and non-disclosure of the 2007 decisions in continuing my employment. These representations were material and important to me in continuing my employment. Had I known about the 2007 decisions, I would have had reason to doubt that I was being told the truth about the plan being provided to me, and I could have explored other options and remedies.

. . . .

23.    From early 2007 through 2009, Burroughs and Morris (including but not limited to on or about Summer of 2007, November 20, 2007, February 22, 2008, February 27, 2008, March 27, 2008, November 2008, February 6, 2009, and March 11, 2009) made affirmative representations that the plan was being worked on and that I was still going to receive the plan I had been promised. I did not learn until discovery in my lawsuit that (1) an incentive plan had been adopted by BPG on August 7, 2007, but *only* for James Hagale, (2) Morris and BPG decided in 2007 to exclude me from participation in the plan, (3) BPG abandoned any steps, actions or efforts to provide the plan to me by early 2007. None of this information was disclosed to me. This information would have been very important to me because I would have known that a plan had already been implemented, which excluded me, and that no plan was really being worked on. I could have questioned and challenged what Burroughs and Morris were telling me about the status and implementation of the plan promised to me. Instead, I continued my employment for the plan in reliance on Defendant's affirmative representations, silence and non-disclosure.

24.    I trusted and believed Burroughs when he told me (on numerous occasions) that I would be receiving the plan he had offered and promised me on April 20, 2006. I had known and worked with Burroughs for many years and didn't think he would lie to me about the implementation of my plan. However, I believe he lied to me after the 2007 decision to abandon and exclude me from the plan I had been promised in 2006.

. . . .

7

26.     The depositions of Morris, Hagale and Burroughs were taken following my deposition taken in this matter on February 7, 2013. I believe that Morris, Hagale and Burroughs lied about what was offered and promised to me, and after early 2007, I believe that Defendants did not intend to fulfill the representations made to me or to actually provide and implement the plan I had previously been offered and promised in 2006. By way of example, these persons asserted in their depositions that the plan I was offed and promised on April 20, 2006, was a 'profits interest' plan, but Defendants' Privilege Log (Exhibit 8) shows that such a plan was not drafted until about six months later on October 10, 2006.

The relevant portions of Morphis' sworn affidavit (as cited in Morphis' response) directly

contradict Morphis' sworn deposition testimony on the same subject matter:

**Q.     Do you think that Ken Burroughs had any obligation to tell you that there had been some sort of plan for additional compensation for Jim Hagale?**

A.     No.

**Q.     Do you think that anyone from Tracker or Bass Pro had an obligation to tell you that there had been a plan adopted which included Jim Hagale for additional compensation?**

A.     No.

**Q.     Do you have any information that Tracker or Bass Pro never intended to adopt a retirement plan or profit-sharing plan that included you?**

A.     Only with—in the meeting which John L. attended by telephone, and at that time is when he told me that the retirement plan wasn't going to happen.

**Q.     Do you have any other information that Bass Pro or Tracker Marine never intended for you to be included in a profit-sharing or retirement program other than the meeting you had in which John Morris participated by telephone and indicated to you that there would be no retirement plan or profit-sharing plan?**

A.     No.

**Q.     Do you think that Ken Burroughs ever lied to you or didn't tell you the truth with respect to what was going on with respect to the consideration of a retirement plan or profit-sharing plan?**

A.     No.

8

**Q.      Do you think that anyone from Tracker Marine or Bass Pro ever lied to you or didn't tell you the truth with respect to what was going on with respect to the consideration of a retirement plan or a profit-sharing plan?**

A.      No.

(Bolding in original).

I believe that Morphis' arguments are premised on an inoperable version of the uncontroverted material facts and summary judgment record before us. Our case law designates that his Point 14 and 15 "arguments are ***analytically useless*** in . . . appellate review." ***Green***, 606 S.W.3d at 120 (quoting ***Blue Chalk***, 497 S.W.3d at 835).

Additionally, I believe the principal opinion inverts our standard of review. The opinion reports that:  "To make matters worse, Defendants disregard *all* SUMF denials, claiming that Morphis' supporting affidavit contradicted his earlier deposition testimony." I disagree that this makes matters worse, but rather reflects the fact that Respondents' brief—unlike Morphis'—follows our standard of review.[11]      Moreover, Point 15 does not assert "fraudulent misrepresentation" as Morphis' Count XI claim, against which the trial court purportedly erred in entering summary judgment. Morphis' Point 15 argument conflates fraudulent misrepresentation and fraudulent non-disclosure as to Count XI.[12]  In other words, the principal opinion premises its

---

[11] Below, Respondents won—Morphis lost. We assume the trial court ruled in favor of Respondents' objections and arguments, and ruled against Morphis'. On appeal, Morphis has the burden to demonstrate reversible error—Respondents have no burden on appeal. Morphis' only attempt at confronting Respondents' *extensive* briefing on the instances and significance of Morphis' contradictory testimony is his assertion of bare legal conclusion. *See* note 10.

*See also **Altidor v. Broadfield***, 576 S.W.3d 272, 277 (Mo.App. E.D. 2019) ("Plaintiffs . . . assert various disjointed legal arguments, some of which are clearly misplaced under the standards for a summary judgment. We cannot—without acting as their advocate and reconstructing this point and argument for Plaintiffs—decipher any basis for relief amidst this legal nonsense. Any arguments . . . relating to an error in the granting of summary judgment have been abandoned, and we will not review this point."); ***Fleddermann v. Casino One Corp.***, 579 S.W.3d 244, 249 (Mo.App. E.D. 2019) ("Appellant's failure to properly present the relevant uncontroverted material facts in his statement of facts is fatal to his appeal because we cannot sift through a voluminous record, separating fact from conclusion, admissions from disputes, the material from the immaterial, in an attempt to determine the basis for the motion without impermissibly acting as advocates.") (internal quotation and citations omitted).

[12] *See* note 10.

reversal on a basis not asserted as the reason for reversal in Morphis' point, which appears only in multifarious conflation in Morphis' argument section. In my opinion, granting Morphis' Point 15 exceeds our role as an appellate court.

Furthermore, I am compelled to write further on the discovery issues discussed in the principal opinion. It is an understatement to label those issues as "violations" when it was discovery "abuse" plain and simple. Morphis provided his attorney with secretly recorded statements before the first lawsuit was filed. The statements were intentionally withheld despite appropriate discovery. The trial court found:

> 109. **The deceit of Plaintiff and his counsel does not stop with simply providing false sworn discovery responses. Plaintiff and his counsel used the information in the recordings to depose Mr. Morris and Mr. Hagale about conversations that occurred about four (4) years before their respective depositions. Plaintiff was aware that his counsel was asking questions that directly related to the recorded March 11, 2009 conversation and other conversations. Plaintiff and his counsel have acted in bad faith which prejudiced Defendants in *Morphis I* and *II*.**
>
> 110. . . . The written discovery was done in different sets, over a period of time, '**so the fraud continued over a period of years**.'
>
> 111. The contemptuous behavior can further be shown by the following conduct:
>
> a) Plaintiff's objections to interrogatories were overruled and Plaintiff still did not acknowledge the recordings;
>
> b) Plaintiff did not identify the existence of the recordings in discovery to which he did not object;
>
> c) The recordings were required to be produced pursuant to Rule 56.01(b)(3)(b);
>
> d) Plaintiff's counsel did not disclose the March 11, 2009 recording until after the depositions had occurred and he needed justification to file a Fourth Amended Petition;

e) When Plaintiff supplemented his discovery on October 18, 2013, he did not indicate that other recordings existed or that the March 11, 2009 recording had been altered;

f) Plaintiff's counsel moved to quash the written discovery and depositions of Plaintiff and himself in an attempt to prevent discovery on whether additional recordings existed; and

g) Plaintiff's counsel did not disclose the existence of additional recordings **until directly asked by the Court, and <u>even then did not disclose that the initial recording was altered</u>**.

112. **The pattern of deceit continued over a period of years by numerous fraudulent acts to conceal the existence of the recordings so Plaintiff could benefit by the non-disclosure and Defendants would be prejudiced**. Plaintiff and his counsel should not be rewarded by their deceptive behavior and be allowed to re-depose Mr. Morris, Mr. Hagale, and Mr. Burroughs, or utilize any of the deposition testimony referencing conversations that were recorded.

. . . .

116. Moreover, Plaintiff purposely withheld these recordings in responding to discovery until *after* Defendants' current and former employees, Mr. Morris, Mr. Hagale, and Mr. Burroughs, had been deposed in order to hamstring Defendants. During the depositions in 2013, Plaintiff's counsel, without referencing the recording, asked pointed questions about comments made in the March 11, 2009 recorded conversation, which occurred four years earlier. **<u>Plaintiff waited to produce the recordings until after the depositions in order to try to elicit inconsistent testimony by Defendants' representatives</u>**. (Italics in original).

117. These depositions were tainted because Plaintiff questioned Defendants' current and former employees on details of the recorded conversations without Defendants' current and former employees having the benefit of hearing the conversations to refresh their recollection of conversations that had occurred four years earlier.

118. **Plaintiff now seeks to use this testimony against Defendants. Plaintiff's false, incomplete, and evasive discovery answers prejudiced Defendants by preventing them from fully viewing the evidence <u>and derailing their efforts to put forth a defense</u>**.

. . . .

124. **The discovery rules are intended to guard against this gamesmanship**. . . . Defendants were prejudiced by Plaintiff's discovery mis-

conduct in *Morphis I* and would continue to be prejudiced unless: a) the recordings are prohibited from use; and b) the deposition testimony of John Morris and James Hagale invoking the recordings are prohibited from use. **Justice so requires, because <u>Plaintiff's fraud constituted numerous separate acts of deception over a period of years</u>**.

(Emphasis added).

These findings by the trial court demonstrate Morphis has no basis to complain about the trial court's ruling on the protective order that arose out of the withheld statements.

I would affirm the trial court's judgment in all respects.


WILLIAM W. FRANCIS, JR., J. – SEPARATE OPINION AUTHOR